FRANK P. J. CARLETON, et als.,

*vs.*

CAMDEN ANCHOR-ROCKLAND MACHINE COMPANY.

Knox.   Opinion April 2, 1918.

*Water rights.   Liability for adding flash-boards to dam.*

In an action on the case to recover damages because of the flowing out of the plaintiff's water wheel and consequent loss of power by the defendant's dam next below on the river it is

*Held:*

1.   That whatever the rights of the respective owners of the two water privileges might be under their deeds, their legal rights have been fixed so far as this case is concerned by the agreement entered on the docket by which both parties and the court are bound.

2.   That under that agreement the defendant's flowage level of the lower  pool in Megunticook River is "the level of the top of the northeast side planking of the old flume at the dam, to be fixed from the Government bench mark at Camden National Bank."

3.   That therefore the only issue in the case was one of fact for the jury, whether the defendant's flowage level had exceeded the agreed limit.

4.   That the verdict of jury finding such excess was warranted by the evidence.

5.   That the damages awarded to the plaintiffs, $506.25, were not excessive.

Action on the case to recover damages on account of the unlawful raising of water by defendant thereby causing damage to plaintiffs' mill.   Defendant filed plea of general issue.   Verdict for plaintiff in the sum of $506.25.   Motion for new trial filed by defendant.   Judgment in accordance with opinion.

Case stated in opinion.

*A. S. Littlefield, and M. T. Crawford,* for plaintiffs.

*J. H. Montgomery,* for defendant.

SITTING:   CORNISH, C. J., SPEAR, HANSON, PHILBROOK, JJ.

CORNISH, C. J.   Action on the case to recover damages because of the flowing out of the plaintiffs' water-wheel and consequent loss of power.

The plaintiffs and defendant are the owners of dams on Megunticook River in the town of Camden, the plaintiffs' dam being next above the defendant's.   Originally both properties were under a single ownership and on January 15, 1823, nearly a century ago, the owners, John Pendleton and others, carved out and sold the lower privilege to one Lewis Ogier.   Through mesne conveyances the plaintiffs have succeeded to the Pendleton interest and the defendant to the Ogier interest.   The Pendletons in their deed specifically defined the rights granted to the lower privilege and the height at which the dam could be maintained.   But because of the lapse of time, as stated by counsel for defendant in his brief, "the exact knowledge of where the top of the lower dam should be was not known to either party.   The marks indicating it when the deed was first made had been obliterated by the changes made during the different employments of the lower dam."   Therefore the parties entered into the following agreement which was entered on the docket and became a part of the record in this case: "It is agreed by the parties that the defendant's flowage level of the lower pool in Megunticook River by defendant's dam shall be the level of the top of the northeast side planking of the old flume at the dam, to be fixed from the Government bench mark at Camden National Bank."

Whatever construction might have been placed upon the original deed this agreement is binding upon the parties and the court, and must govern here.   The precise allegation in the writ, which forms the

basis of the plaintiffs' action, is that the defendant without any lawful authority, right or permission has erected, built and maintained certain structures called "flush boards" upon and across the spillway of their dam thereby raising the water in the defendant's mill pond above its lawful height, causing it to flow back upon the plaintiffs' wheel and thereby diminish its effective power for manufacturing purposes. Under this allegation and the agreement above referred to as to the legal flowage level of the defendant's dam, the issue became one of simple fact for the jury, and their finding was in favor of the plaintiffs with a verdict of $506.25.    The claim of the plaintiffs was that some years ago in repairing the spillway in its dam the defendant constructed the standards at the side so that they projected higher than before, and then gradually filled in the space with flash-boards, at first of a temporary nature and unfastened, and finally fastened, and that these boards ultimately extended to the top of the standards.    This was denied by the defendant, but there was substantial evidence to support the contention.    These flash-boards became an effective part of the defendant's dam.    *National Fibre Board Co.* v. *Electric Co.*, 95 Maine, 318.    Whether the dam, as thus changed by the flash-boards, exceeded in height the legal limit as provided by the agreement, in other words, whether the flowage level of the defendant's mill pond exceeded "the level of the top of the northeast side planking of the old flume at the dam" was a matter of engineering, of scientific and accurate testimony.    On this point the evidence preponderates in favor of the plaintiffs.    Their engineers place the excess at about fifteen inches, while even the engineer for the defendant admits that the dam is from two to four inches higher in places.    The plaintiffs' contention is confirmed by the results.    Their wheel is set in such a position that with the water at the legal height the water level would correspond with the top of the thrust block on the wheel.    Were this the usual water level the thrust block would bear the imprint.    But as a matter of fact at a point fifteen inches above this is a well defined mark showing the water line as maintained through a long period of time.    It is visible even in a photograph.    This is a convincing witness. Moreover it appeared in evidence that prior to the raising of the level, a quarter turn on the plaintiffs' wheel would give sufficient power for their mill, while, since the change, the wheel must be run wide open, and no more power is required now than then.

In the light of all the testimony, which it is unnecessary to further detail, and especially in consideration of the fact that the jury took a view of the premises and were thereby enabled to see the situation for themselves, a privilege of which this court is deprived, we do not feel warranted in disturbing the verdict.

Nor are the damages excessive. The only testimony on this point came from the plaintiffs' hydraulic engineer who computed the loss of power caused by the back water. The charge clearly stated the elements of damage and eliminated all speculative profits. The jury evidently did not disregard the instructions of the court.

*Motion overruled.*